BAKER *vs.* THOMAS ET AL.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE DISTRICT PRESIDING.

A title to land resulting from an order of survey granted in 1792, actual survey in 1802, and accompanied by proof of possession three or four years, will prevail over a title based on a prior order of survey granted in 1790, without being surveyed or ever taken into possession, both titles being confirmed by the same act of Congress.

According to *art.* 52, *p.* 484, of the *Old Civil Code*, and *art.* 3484 of the *Louisiana Code*, if a party instituted his suit after prescription began to run, it will interrupt and stop prescription up to that time, although the suit is brought before an incompetent jurisdiction, and is voluntarily or otherwise dismissed.

The new prescription under the *art.* 3485, of the *Louisiana Code*, by which it is declared that if the plaintiff, after having made his demand, abandons or discontinues it, the interruption shall be considered as having never happened, can only operate in *futuro*, not having a retroactive effect.

The plaintiff claims four hundred arpens of land, on the island of Cote Blanch, in the parish of St. Mary, now in the possession of the defendants. He derives his title by regular mesne conveyances from the heirs of Abraham Roberts, deceased, who held the land in virtue of an order of survey granted by the Baron de Carondelet, the 18th of April, 1792. This title was accompanied by a plat of the survey made by Fr. Gonsoulin, dated April 18th, 1802. It contained ten arpens front, with the depth of forty, and called to adjoin the lands of Wm. Bell on one side, and by the royal domain on the other. The commissioners of land claims reported that no proof of occupancy accompanied this title, but in their opinion the claim was valid under the usages of the Spanish government, and ought to be confirmed. It was confirmed by act of Congress, approved April 29th, 1816.

The defendants, who are the heirs of James Thomas and Jett Thomas, of Georgia, claim title to the tract of land in controversy, in virtue of a Spanish grant, dated November 17th, 1790, in favor of one Louis G. Demaret, for thirty arpens front with the ordinary depth, on Cote Blanche island, and embracing the *locus in quo.* The defendants' ancestors derived title regularly by mesne conveyances from Demaret the grantee. There is no positive evidence of this grant having ever been occupied by the grantee or any one for him; yet the commissioners recommended the claim to Congress, which was also confirmed by act approved April 29, 1816, leaving the question of right between the conflicting claimants to be settled by the courts. These constitute the titles of plaintiff and defendants. The latter rely on the prescription of ten, twenty, and thirty years. The plaintiffs, however, allege prescription was interrupted. Robert Martin, the vendor of Baker, the present plaintiff, instituted suit in the Probate Court in the parish of St. Mary, the 24th July, 1824, and on the 17th of September, 1825, his attorney voluntarily dismissed it; Martin having by this time sold all his interest to the plaintiff.

When the suit was ready for trial, the curator of the vacant estate of one Peter Lee, filed his petition of intervention, claiming the premises in virtue of alleged grants made in 1791, to J. and W. and S. Bell, A. Roberts, and Louis G. Demaret, who it is averred cultivated the land before the year 1800, and about that time sold to Peter Lee. No chain of title was shown on the trial and the court and jury disregarded the claim.

The plaintiff had judgement in his favor quieting him in his title to the land. The defendants and interpleader appealed.

*Lewis,* for the plaintiff:

1. We show a better title to the land in controversy, accompanied by actual possession. Roberts under whom the

WESTERN DIS.
Sept. 1832.

BAKER
vs.
THOMAS ET AL.

plaintiff claims, took possession of the land in 1792, cultivated it, and continued in possession until about the year 1800.

2. The prescription relied on by the defendants is interrupted by the institution of a suit by the vendor of the plaintiff before the claim was barred.

3. By the fact of instituting suit, prescription which had began to run, was interrupted; and although afterwards dismissed, it stopped the prescription up to the time it was discontinued. The suit was instituted under the old code and dismissed after the adoption of the new. *Old Civil Code,* 484, *art.* 52. *Partidas, vol.* 1, *p.* 390. 3 *Part. tit.* 29, *law* 29.

4. By the interruption of prescription the plaintiff's vendor acquired a vested right; and this whether the court had jurisdiction of the case or not. See *the same authorities.*

5. The provision of the Louisiana Code in relation to the effect of discontinuing a suit, can have no operation in this case, because the prescription was by the service of the citation absolutely destroyed, and could only recommence from the time of dismissal. See *the authorities cited,* and *Pothier on Prescription and Possession.*

*Bowen,* argued on behalf of the defendants.

*McMillan,* for intervenor:

1. Denied the right of the plaintiff and defendant to make admissions relative to each other as regards the mesne conveyances and *locus in quo,* when a third party is concerned.

2. Lee's right was acquired under the old Spanish law, and it is sufficiently proven. 11 *Mar.* 207. 7 *Mar. N. S.* 314. 3 *Lou. Rep.* 104.

3. Lee claims under a grant to several of the Bells, went into possession in 1799, and continued more than ten years. The claim was confirmed on settlement and cultivation. He was found in possession as owner, and is to be considered as such until a better title is shown. *C. Code, p.* 482, *art.* 32—9.

MATHEWS, J., delivered the opinion of the court.

BAKER
vs.
THOMAS ET AL.

In this case the plaintiff claims title to a tract of land situated in the island of Cote Blanche. The cause was submitted to a jury in the court below, who found a verdict in his favor against the claims of the defendants and intervenor, and judgement being rendered thereon, these parties took appeals.

The titles set up on the part of the intervening party to the *locus in quo*, appears to us to be wholly unsupported by legal evidence; and as to this claim there can exist no doubt of the correctness of the verdict and judgement of the District Court.

The plaintiff claims the land in dispute in virtue of a title conceded to one Abraham Roberts, by the Spanish government, in the year 1792. The evidences in support of this title, are an order of survey of that date, and actual survey in 1802, and proof of possession by the grantee during three or four years. The *locus in quo* as between the plaintiff and defendants is admitted; and also, the genuineness and validity of all the mesne conveyances from the grantee down to said plaintiff. This title was reported favorably on by the land commissioners of the United States, and confirmed by an act of Congress, passed on the 29th of April, 1816.

*A title to land resulting from an order of survey in 1792, actual survey in 1802, and accompanied by proof of possession three or four years, will prevail over a title based on a prior order of survey granted in 1790, without being surveyed or ever taken into possession, both titles being confirmed by the same act of Congress.*

The title set up by the defendants is an order of survey accorded to one Dumaret in the year 1790, under whom they hold. It does not appear that the land conceded was surveyed, or that the grantee ever took possession of it. This claim was confirmed by the same act of Congress.

The simple statement of these facts shows clearly that the plaintiff has shown the best title to the property in dispute, according to principles recognised by this court in the case of *Gonsoulin's heirs* vs. *Brashears.* 5 *Mar. N. S.* 33. In that case a preference was accorded to a later order of survey, accompanied by actual settlement, over one older, when the land was never occupied by the claimant. But in the present case, the defendants rely greatly on their pleas of prescription, particularly that of ten years. And, according to the testi-

*According to art. 52, p. 484, of the Old Civil Code, and art. 3484 of the L. Code, if a party instituted his suit after prescription began to run, it will interrupt*

WESTERN DIS. *Sept. 1832.*

BAKER
*vs.*
THOMAS ET AL.

and stop prescription up to to that time, although the suit is brought before an incompetent jurisdiction and is voluntarily or otherwise dismissed.

The new prescription under the *article 3485 of the L. Code,* by which it is declared that if the plaintiff, after having made his demand, abandons or discontinues it, the interruption shall be considered as having never happened, can only operate *in futuro,* not having a retroactive effect.

mony, it would prevail, unless the interruption alleged by the plaintiff, is to be supported.

The interruption alleged was made by the institution of a suit, in which the disputed premises were claimed by one of the immediate owners between the grantee and the plaintiff. It was commenced under the Old Civil Code, and by the provisions of law then in force, did, *ipso facto,* interrupt prescription from the date of the citation. And this interruption took place, although suit was commenced in an incompetent tribunal. See *Old Civil Code, p.* 484, *art.* 52. The suit alluded to was brought in the Court of Probates for the parish of St. Mary, and was dismissed by the plaintiff in that action after the promulgation of the Louisiana Code. The article 3484 of this work, is precisely like the article 52 of the old code cited. But the new code contains additional provisions, found in the article 3485, by which it is declared that if the plaintiff after having made his demand, abandons or discontinues it, the interruption shall be considered as having never happened. This being new legislation on the same subject, (in conformity with general principles on the subject of interpretation of laws) could only operate *in futuro,* as they ought not to be allowed a retroactive effect. The counsel for the defendants, however, contends that the article 3485, is solely remedial in its effects, and may, therefore, be retrospective in its operation. The distinction as to laws merely remedial, and those which affect the rights of persons, is often difficult to be ascertained, as the shades between rights and remedies, in a legal point of view, frequently run much into each other.

Perhaps it cannot be said, strictly speaking, that the person who brought the suit in the Court of Probates, acquired thereby any additional right to the property which he sued for. But he clearly, by this act, prevented the loss of rights which he already had, for by the service of the citation the prescription which had already began to interfere with these rights, was interrupted; and once interrupted to the previous time, could never after be computed to acquire a right by prescription. It was an act which had produced its legal

effect, which no legislative power could afterwards justly annul. We are, therefore, of opinion that the means of defence based on prescription cannot avail the defendants.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be affirmed, with costs.