## BADON et al. *v.* BAHAN.

Where a party relies on a verbal sale of lands, alleged to have been made while the laws of Spain were in force, it is incumbent on him to show that the sale was made at a time when such transfers were authorized by law.

Where proof of the vacancy of a succession is indispensable to support a plea of prescription, the burden of proving that the succession was vacant rests upon the party pleading the prescription.

The institution of an action does not interrupt prescription only while it lasts. Prescription being once interrupted, the previous time can never afterwards be computed to make up the time necessary to prescribe.

BADON
v.
BAHAN.

APPEAL [from the District Court of St. Tammany.  *Penn*, J.

*J. R. Jones*, for the plaintiffs, on the question of the prescription of ten years. contended : That there is no evidence in the record of the acceptance of the succession of *Henry Badon* by his heirs, and that therefore it must be considered a vacant succession, and that prescription runs against vacant successions.  " A succession is called vacant when no one claims it, or when all the known heirs to it have renounced it."  Civil Code, art. 1088.  The evidence shows that *Henry Badon* died, leaving a widow and four minor children present, and according to the foregoing definition his succession could not be vacant.  He who claims title to property by prescription, must establish his title by evidence as strong as if he claimed by purchase.  Prescription is an entire thing, and must be proved to the extent laid.  Had the succession of *Henry Badon* been a vacant succession, it was a fact susceptible of proof; and if that fact was necessary to establish title in defendant, he should have proved it on the trial.  See 1 Phillips' Evidence, p. 206.  1 Greenleaf's Evidence, secs. 58, 71.  2 Greenleaf's Evidence, sec. 539. *Andrews* v. *Rhodes*, 10 Rob. 52.

*Halsey*, for the defendant.  It does not appear that the succession of *Henry Badon* was ever claimed by his heirs until they instituted their suit in 1839. " An estate is called vacant when no one claims it."  C. C. 1088.  " When no person claims its possession, either as heir, or under any other title.  Code of 1808, p. 172, art. 118.  *Henry Badon* died in 1815 or 1816.  His succession remained vacant, at least until 1839.  " Prescription runs against a vacant estate, though no curator has been appointed to it."  C. C. 3492.  Code of 1808, p. 486, art. 62.  And the heirs take the succession without prejudice to the rights which have been acquired by third persons upon the property of the succession by prescription, &c.  C. C. 1024.  The prescription continued as it was running against *Henry Badon*, to run against his succession, both under the Code of 1808, and that of 1825.  " We consider that, for the purposes of prescription, successions now represent, as they did under the Code of 1808, and under the roman law, the person of the deceased, as long as the heirs leave their rights in abeyance, and avoid the responsibility and charges of asserting them."  *McCullough* v. *Minor*, 2 La. Rep. 468.  As in that case the prescription of ten years was held sufficient, though some of the heirs resided out of the State, so here it must be considered that prescription continued to run, notwithstanding the minority of the heirs.

*Preston*, on the same side.  The defendants are fully protected by the prescription of ten years against *majors*.  They hold under the *will* of *Maria Badon*, their mother, dated the 17th of August, 1820,.  The will is a formal title.  This suit was commenced the 13th of September, 1847.  The plaintiff, *Henry Badon*, became of age 11th May, 1831, sixteen years before the commencement of this suit.  *Duncan M. Badon* became of age 19th July, 1832, fifteen years before the commencement of the suit.  *Edward Badon* became of age April 21st, 1834, thirteen years before the suit.  *Harriet Badon*, 23d March, 1836, eleven years and six months before the commencement of this action.

A suit, however, was instituted for the same cause of action the 31st August, 1839.  It was dismissed in June, 1840.  See 15 La. 455.

The term on which to base the ten years' prescription was interrupted therefore less than a year ; which, deducted from the term that had run even *against Harriet*, leaves more than ten years on which to prescribe against her under the will of *Maria Badon*, she being of full age.

This is a complete defence, unless the court should adopt the doctrine that a new term of prescription must run *after every interruption by suit*, and thus by allowing a new suit every twenty-ninth, or even ninth year, render litigation absolutely interminable.  This would be utterly inconsistent with the common place meaning of the word " interruption."  Interruption, by *acknowledgment*, necessarily produces the consequence of the entire new term ; and therefore the Code declares that prescription *ceases* to run after acknowledgment of right.

But *suit only interrupts* the term of prescription while it lasts.  C. C. 3484.

The defendant does not, in such a case, *acknowledge plaintiff's right*, but resists his claim by all means in his power till the *suit is dismissed*.  The dismissal of the suit places them in *statu quo ante bellum*.

If nine years of the term of prescription runs before the suit, one year after it is defeated completes the term of ten years.  This is reasonable : any other construction of the law is absurd ; and this court substantially adopted this principle in the case of *Calvit* v. *Mulhollan*, 12 Rob. 260.

The judgment of the court, (Eustis, C. J. absent,) was pronounced by

King, J.   The plaintiffs claim three-tenths of a tract of land, alleging that they acquired it by inheritance from their ancestor *Henry Badon*, and their uncle *Zenon Badon*.   The defendant avers that *Robert Badon* and wife were the legal owners of the entire tract, and that they and their heirs possessed it peaceably and without interruption for more than forty years; that he acquired a legal and equitable title to it, at a judicial sale of all the rights of the heirs of *Robert Badon*, made on the 3d July, 1847.   He further pleads the prescriptions of ten, twenty, and thirty years, and calls his vendors in warranty.   The warrantors set up substantially the same defences pleaded by the defendant.   A judgment was rendered in favor of the plaintiffs in the court below; and the defendant has appealed.

The land in controversy was granted by the spanish government to *Mrs. Badon*, who devised it to her three sons, *Robert*, *Henry* and *Zenon*.   *Zenon* died without issue, leaving as his heirs his two brothers, *Robert* and *Henry*, and three sisters.   Thus far the facts are not contested.   The question at issue is, whether *Henry Badon*, the ancestor of the plaintiffs, was ever divested of his interest thus acquired by devise from his mother, and by inheritance from his brother.   The defendant contends: *first*, that *Robert Badon*, under whom he holds, acquired the undivided interests of both of his brothers, by a verbal sale; and *secondly*, that *Robert Badon*, his widow and heirs have possessed the land as owners, without interruption, for more than thirty years, and have thereby acquired a perfect title.

On the trial of the cause witnesses were permitted to give in evidence the conversations and admissions of the parties, for the purpose of proving a verbal sale of the land under the spanish law, which prevailed at the date when it is said to have been made, to which a bill of exceptions was taken.   We do not consider it material to inquire into the correctness of the ruling of the district judge, as the evidence does not, in our opinion, establish such a sale.

Three witnesses were introduced to show circumstances and conversations, from which it is contended a sale must be inferred.   The first deposes that *Robert* lived on the land from the time of his mother's death until his own death: believes he lived there as owner: never heard *Henry* and *Zenon* claim the property as theirs: has often heard them say it was *Robert Badon's* place.   Heard *Robert* say to *Henry* and *Zenon* that he had finished paying them, to which the latter assented, and said they would give him receipts at any time.   The memory of the second witness is evidently very inaccurate, and not to be relied on.   Many of the facts which he details are contradicted by admissions in the record, and the conversations which he undertakes to detail were conducted partly in French, a language which he admits he did not understand.

The third testifies that he knew *Robert Badon* as early as 1804, at which time he resided on the property in controversy, and held it as owner.   He resided there until his death, and subsequently the property was possessed by his widow, until her death, since when the heirs of *Robert Badon* have had possession of it. Never heard of the claim of the heirs of *Henry Badon* until within a year. *Henry Badon* never lived upon the land in controversy as owner or claimant, and the witness never heard that he made any claim to it.   Never heard that *Zenon Badon* made any claim to any part of the land in controversy.

These are the only witnesses relied on to prove the verbal sale.   In aid of the facts which they disclose, the defendant also shows that *Robert Badon* died in

1819, and that the tract of land in controversy was inventoried as his, and adjudicated to his widow.

This testimony is too vague and weak to authorize us to draw from it the conclusion that *Henry* sold his interest to *Robert Badon*, even if it stood unopposed by circumstances strongly tending to repel that inference. No fact is testified to inconsistent with *Henry Badon's* being a part owner of the land at the time when the conversations and acts detailed by the witnesses occurred. There is no distinct admission of a sale; and neither of the witnesses say that the parties ever spoke of a sale having been made. The conversation in relation to the state of the accounts between the parties, is not shown to have had any connection with, or reference to, a sale; and it is quite as probable, from the evidence, that it related to the accounts of *Robert* with his brothers, as their curator, during their minority. If it could be considered as relating to a sale, it is not shown whether the alleged sale was made under the dominion of the spanish laws or subsequently.

As the defendant relied upon a verbal sale, it was incumbent on him to show one made at a time when such transfers were authorized by law.

But independently of the loose and unsatisfactory character of the evidence adduced in support of a verbal title, other facts are disclosed opposed to the presumption of a sale. Although two witnesses state that *Robert* lived upon the land, as owner, from the death of his mother until his own, it is shown by several other witnesses, whose testimony is unimpeached, that *Zenon* also lived upon the land until his death, which occurred in 1815; and that *Henry* likewise lived upon it from the time of his mother's death until 1814, and that he built a house upon it, which he occupied for several years after his marriage, and finally removed to an adjoining tract. His possession must be considered to have been in accordance with his title, no divestiture having been shown. The subsequent uninterrupted possession of *Robert*, and of his widow and heirs, and the omission of the heirs of *Henry* to assert their claim, may well have arisen from the long minority of the latter.

The next ground relied upon is, the prescription of thirty years. This plea cannot avail the defendant. We have seen that *Henry Badon*, the ancestor of the plaintiffs, resided upon the land in controversy until 1814, and in the absence of proof of a divestiture of title, he must be presumed to have possessed as owner. Prescription could only commence at that date, and could not have been completed until 1844. But, in 1839, it was interrupted by the intervention of the plaintiffs in a suit in which the heirs of *Robert Badon* were claiming a partition among themselves of the land in controversy, alleging that it belonged exclusively to them. In that suit the present plaintiffs asserted the same title under which they now claim. See the case reported in 15 La. 455.

The defendant next relies on the adjudication of the land to the widow of *Robert Badon*, as a title on which to base the prescription of ten years against the succession of *Henry Badon*, which he contends was vacant. There is neither averment in the pleadings, nor proof in the record that the succession was vacant, and the fact is not to be presumed. If it was vacant, it must have been susceptible of easy proof, and was indispensable to support the prescription of ten years. It is a fact relied on by the defendant to establish his title, otherwise defective, and the burthen of proof rested upon him. 10 Rob. 52. 1 Greenleaf on Evidence, secs. 58, 71, 72. 2 Ibid, sec. 539.

It is further contended that, more than ten years elapsed from the time that three of the plaintiffs attained the age of majority, until the inception of the

present suit; and that the defendant's title is protected, as far as relates to them, by the prescription of ten years.

We have seen that the plaintiffs were parties to a suit instituted in 1839, asserting title to the land in controversy. At that time the three plaintiffs referred to had attained the age of majority; but the suit interrupted prescription. The proposition that a suit only interrupts the term of prescription while it lasts, is untenable. In the case of *Baker* v. *Thomas et al*, 4 La. 418, it was held that, the prescription having been once interrupted, the previous time could never after be computed to acquire a right by prescription.